2008 OK CIV APP 106

**In re the MARRIAGE OF RITCHIE.**

**Randall James Ritchie,
Petitioner/Appellant,**

v.

**Lisa Ann Ritchie, Respondent/Appellee.**

**No. 105,063.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Nov. 7, 2008.

Sandi S. Seale, Seale Law Office, Oklahoma City, OK, for Petitioner/Appellant.

R.L. Buckelew, Buckelew & Buckelew, Oklahoma City, OK, for Respondent/Appellee.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Petitioner/Appellant Randall James Ritchie (Husband) appeals the provisions of the Domestic Relations Order (QDRO) entered pursuant to the Agreed Journal Entry

Decree of Dissolution of Marriage ("Consent Decree") ending Husband's marriage to Respondent/Appellee Lisa Ann Ritchie (Wife). Husband asserts the QDRO's formula for dividing his military retirement benefits differs from the parties' agreed division reached in the Consent Decree. The QDRO prescribes the correct formula for dividing Husband's military pension benefits and it is in accord with the parties' Consent Decree. We therefore affirm.

¶ 2 Husband was in the military before the parties' 1988 marriage and he had not retired when they began dissolution proceedings. Husband filed his Petition for Dissolution December 14, 2005. The parties filed their Consent Decree June 6, 2007. Clause 7 of the Consent Decree provides that Husband "is awarded all interest in his Military Retirement after (Wife) is awarded her marital portion pursuant to the Qualified Domestic Relations Order provided for herein from date of marriage: 04/09/1988 and date of filing: 12/14/2005." Clause 9(b) of the Consent Decree is partially handwritten, and it provides:

> The issue of the retirement order shall be submitted on (Husband's) motion to settle. [The] Order or other appropriate Orders shall be prepared by the office of Ken Klingenberg and the fees will be paid from the parties(') 2005 tax return. That survivor benefits shall be included in the Qualified Domestic Relations Order and other appropriate Orders.

The parties filed competing motions to settle journal entry in which they argued the issue of the proper formula to be used to divide Husband's military retirement benefits. The QDRO in this case was filed August 20, 2007. It provides, in Clause D(5):

> Amount of Member's benefits to be paid by Plan to Former Spouse:
> The Former Spouse is awarded a percentage of the Member's disposable Military retired pay, to be computed by multiplying fifty percent (50.00%) times a fraction, the numerator of which is two hundred twelve (212) months of marriage during the Member's creditable military service, divided by the Member's total number of months of creditable military service. Former Spouse shall receive her proportionate share of all cost of living adjustments. The Former Spouse shall be entitled to the maximum surviving spouse benefits under the Survivor Benefit Plan.

¶ 3 On appeal, Husband challenges the formula used in the QDRO for division of his military retirement benefits. The formula used provides for Wife to receive a fraction of the monthly disposable military retired pay. That amount will not be determined until Husband retires and it will be affected by years of service and any promotions Husband receives before retirement. Husband argues that Wife will accordingly get some of Husband's post-marriage income, and he argues the Consent Decree expressly limits Wife's share to the benefits earned only during marriage. The formula recognizes that the longer Husband is employed, the denominator increases, so that Wife's portion of the retirement benefit decreases. As a result, Wife's proportional share of Husband's disposable military retired pay will continue to decrease as Husband's length of service and amount of disposable military retired pay increase. Kyle Swisher, the attorney in Ken Klingenberg's office who prepared the QDRO, testified that the formula is appropriate. Swisher noted that the 18 years of marriage contributed to Husband's ability to earn salary increases and increases in rank. Swisher conceded that under the formula used in the QDRO, Wife "will share in his future increases, however, … the formula takes care of that problem, in that, the denominator of my (formula) increases the longer he works thus shrinking her respective share of her benefits."

¶ 4 So long as the number of months of marriage is included in the formula, then Wife is not receiving a share of the retirement benefits for a longer term than the marriage. In *Jackson v. Jackson*, 2002 OK 25, 45 P.3d 418, the husband was a firefighter before the marriage, and he had not yet retired as of the time of the divorce. The Oklahoma Supreme Court there approved the formula used in this case, explaining:

> the first part of the formula embodies the multiplication of two fractions. One is one-half (½) or fifty percent (50%). The other

fraction has a numerator of one hundred (115) months (the approximate number of months of the parties' marriage) and a denominator representing appellant's total months of employment as a firefighter. The result of the multiplication of these two fractions (which can be expressed in percentage terms) is then multiplied by the total actual dollar benefit eventually to be paid to appellant by the System upon his retirement, which yields the actual share or amount of the System benefit to be paid to appellee.

In that appellant was still employed as a firefighter when the decree was issued and filed, the denominator of the second fraction was not then known. The longer he worked as a firefighter results in the denominator of the second fraction to be continually increasing, which concomitantly results in a **decrease** in the percentage appellee is entitled to under the divorce decree's formula. However, her share of the eventual retirement income from the System **always** remains approximately one-half (½)-or fifty percent (50%)-of the benefit **earned during the marriage.**

\* \* \*

In other words, this will always give former wife about one-half (½) or fifty percent (50%) of the pension earned during the marriage, even though her percentage of the entire pension **decreased** the longer former husband worked as a firefighter

after the marriage because the total months of employment **increased** until former husband finally retired, thus making the second figure or fraction of the divorce decree's formula **smaller.**

*Id.* at ¶¶ 4–5, 17 (emphasis in original).

¶ 5 We recognize that Wife will benefit in any increases in the ultimate retirement payment paid to Husband. This is not an unfair result where the benefit is a contingent amount to be paid in the future. Husband's formula would cause the value of Wife's award to continually decrease until retirement benefits commenced. While it would be possible to actuarially value a spouse's interest at the time of divorce and order payment at that time, that was not what the parties chose to do in this case. The formula used in the QDRO properly limits Wife's share of Husband's military retirement to the amounts earned during marriage and the QDRO complies with the parties' agreement in the Consent Decree. AFFIRMED.

MITCHELL, V.C.J., concurs, and BELL, J., concurs in result.